UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CRAIG ARNOLD SMITH,

     Plaintiff,

v.                                  Case No. 5:17cv202-MCR-CJK

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act").  The case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.  Upon review of the record before the court, the undersigned concludes the findings of fact and

determinations of the Commissioner are not supported by substantial evidence and the Commissioner's decision, therefore, should be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## ISSUES ON REVIEW

Mr. Smith, who will be referred to as claimant, plaintiff, or by name, raises the following issues on appeal: (1) whether the Administrative Law Judge ("ALJ") erred in assigning an "internally inconsistent" residual functional capacity; and (2) whether the ALJ's decision is based on substantial evidence given the ALJ's alleged erroneous reliance on the vocational expert's testimony.[1]

## PROCEDURAL HISTORY

Mr. Smith filed applications for DIB and SSI on March 25, 2014, alleging disability beginning February 15, 2014.[2] T. 135-36.[3] His claims were denied initially and on reconsideration. T. 135, 163. Mr. Smith appeared for a hearing before an Administrative Law Judge ("ALJ") on October 18, 2016. T. 48. On December 7,

---

[1] Plaintiff raises a number of, perhaps disparate, points under the second issue.

[2] Mr. Smith previously filed applications for DIB and SSI in 2012. The ALJ issued a decision denying the prior claims on February 14, 2014. The Appeals Council denied review.

[3] The administrative record, as filed by the Commissioner, consists of 11 volumes (docs. 10-1 through 10-11) and has 597 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

2016, the ALJ issued a decision denying Mr. Smith's claims for benefits.  T. 4-32.

Mr. Smith petitioned the Appeals Council for review of the ALJ's decision.  T. 41.

The Appeals Council denied the request.  T. 167.  The ALJ's decision thus became

the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the

issues raised in this appeal:

- •  "The claimant has not engaged in substantial gainful activity since March 25, 2014, the application date (20 CFR 416.971 *et seq.*)."  T. 6.

- •  "The claimant has the following severe impairments: chondromalacia of the patella and degenerative joint disease of the right knee, posttraumatic deformity of the distal tibia, gout, arthritis, hypertension, diabetes mellitus, status post cerebrovascular accident, posttraumatic stress disorder by history, and a mood disorder by history (20 CFR 416.920(c))."  T. 7.

- •  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

416.920(d), 416.925 and 416.926)." T. 8.

- "[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can continuously use both hands for grasping and fine manipulation; can only occasionally use his left arm to push, pull, or operate hand controls; can never use his right arm to push, pull, or operate hand controls; can only occasionally use his left leg to push, pull, or operate foot controls; can never use his right leg to push, pull, or operate foot controls; can only frequently stoop; can never kneel, crouch, or crawl; can never climb ladders, ropes, and scaffolds; can only occasionally climb ramps and stairs; can never balance on his right leg but can occasionally balance on his left leg; can never reach overhead with his right arm; can only frequently reach overhead with his left arm; must avoid all exposure to extreme temperatures and workplace hazards such as unprotected heights and moving machinery; and can never operate a motor vehicle which requires the operation of a clutch.  The claimant can experience pain which occasionally interferes with concentration, persistence, and pace but does not require the claimant to abandon his

work or workstation.  This is not a continuous concept and occurs up to 20% of the time.  The claimant can only frequently respond appropriately to supervisors; can only occasionally respond appropriately to coworkers and the general public; can constantly use his judgment for simple work-related decisions, but only occasionally use his judgment for complex or detailed work-related decisions; can respond appropriately to infrequent and gradual changes in a routine work setting; can constantly understand, remember, and carry out simple instructions, but only occasionally understand, remember, and carry out complex or detailed instructions; and can maintain concentration, persistence, and pace for two hours at a time with regular breaks; can maintain activities of daily living; and experiences no episodes of decompensation each of extended duration."  T. 10.

- "The claimant is unable to perform any past relevant work (20 CFR 416.965)."  T. 25.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR

416.969 and 416.969(a)).” T. 26.

- “The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2014, the date the application was filed (20 CFR 416.920(g)).” T. 27.

## STANDARD OF REVIEW

A federal court reviews the “Commissioner’s decision to determine if it is supported by substantial evidence and based upon proper legal standards.” *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (“[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.”). Substantial evidence is “‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’” *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). “Substantial evidence is something ‘more than a mere scintilla, but less than a preponderance.’” *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner’s decision,

the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[4]

---

[4] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in 5 steps:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

2.     If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.     If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from performing past relevant work, he is not disabled.[5]

5.      Even if the claimant's impairments prevent him from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, he is not disabled.

Step 5 (or step 4 in cases in which the ALJ decides a claimant can perform past work) is generally where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity ("RFC"). The ALJ establishes RFC, utilizing the impairments identified at step 2, by interpretation of (1) the medical evidence; and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step 5.[6]  "[R]esidual functional capacity is the most [a

---

[5] Claimant bears the burden of establishing a severe impairment that keeps him from performing past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[6] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

claimant] can still do despite [claimant's] limitations.[7]  20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1).  Often, both the medical evidence and the accuracy of a claimant's

subjective complaints are subject to a degree of conflict and that conflict leads, as in

this case, to the points raised on judicial review by the disappointed claimant.

## FACT BACKGROUND

Mr. Smith was born on November 17, 1972.  T. 54.  He was 43 years old at the

time of the hearing and 44 years old at the time of the ALJ's decision.  T. 48, 54.  He

has a ninth-grade education and past relevant work as a truck driver, skidder operator,

———————————

[7]  In addition to this rather terse definition of RFC, the Regulations describe how the
Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity. We will assess your
> residual functional capacity based on all of the relevant medical and other evidence.
> In general, you are responsible for providing the evidence we will use to make a
> finding about your residual functional capacity.  (See § 416.912(c).)  However,
> before we make a determination that you are not disabled, we are responsible for
> developing your complete medical history, including arranging for a consultative
> examination(s) if necessary, and making every reasonable effort to help you get
> medical reports from your own medical sources.  (See §§ 416.912(d) through (f).)
> We will consider any statements about what you can still do that have been provided
> by medical sources, whether or not they are based on formal medical examinations.
> (See § 416.913.) We will also consider descriptions and observations of your
> limitations from your impairment(s), including limitations that result from your
> symptoms, such as pain, provided by you, your family, neighbors, friends or other
> persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

welder, assembler, and surveyor. T. 96-99, 317. Both Mr. Smith and a vocational

expert ("VE"), Vicky H. Pratton, testified at the hearing before the ALJ.[8] T. 91.

At the hearing, the ALJ asked the VE to assume an individual of plaintiff's age,

education, and past relevant work experience who is "capable of performing the

exertional demands of sedentary work as those terms [are] defined in the

Commissioner's regulations." T. 100. The ALJ then asked the VE to

> factor into [her] response, the following other exertional
> and non-exertional limitations. Complete manipulatives no
> problem. That he can continuously use his hands for simple
> grasping and fine manipulation, occasionally use his left
> arm for the pushing and pulling of arm controls, never use
> his right arm for the pushing and pulling of arm controls,
> occasionally use his let foot for the pushing and pulling of
> leg controls, never use his right foot for the pushing and
> pulling of leg controls, frequently stoop, never crouch,
> kneel, crawl, never climb ladders, ropes or scaffolds,
> occasionally climb stairs and ramps, never balance on his
> right leg, occasionally balance on his left leg, never reach
> overhead with his right arm, frequently reach overhead
> with his left arm, never work around unprotected heights,
> be around moving machinery, exposure to marked changes
> in temperature and humidity or drive automotive

---

[8] Plaintiff devoted a significant portion of his brief to a chronological recitation of plaintiff's medical history. Considering the issues raised, this recount of plaintiff's medical history is not particularly helpful to a reviewing court. In the briefing order entered in this case, the undersigned specifically instructed the parties to "set out the factual and medical matters **relevant to the issues argued**." Doc. 11, p. 2 (emphasis in original). Because the issues raised pertain primarily to the vocational expert's testimony and, in any event, do not implicate plaintiff's medical history, the undersigned's factual recitation will be limited in that regard.

equipment requiring the use of a clutch. For the purpose of this hypothetical, the hypothetical individual experiences pain which occasionally interferes with concentration, persistence and pace, but does not require the hypothetical individual to abandon their work or work station. This is not a continuous concept that occurs up to 20% of the time. Further, the hypothetical individual can frequently respond appropriately to supervisors, occasionally respond appropriately to coworkers, occasionally respond appropriately to customers or other members of the general public, can use judgment in simple, one or two-step work-related decisions, can deal with changes in a routine work setting, but the changes should be infrequent and presented gradually, can understand, remember and carry out simple one and two-step instructions, occasionally understand, remember and carry out detailed or complex instructions, can maintain attention, concentration or pace for periods of at least two hours with regular breaks, can maintain activities of daily living and experiences no episodes of decompensation each of extended duration. . . .

T. 100-01. Next, the ALJ asked the VE whether, "[c]onsidering the exertional and non-exertional limitations in the hypothetical, [she had] an opinion whether such an individual could perform any of the past relevant work . . . identified." T. 101. Ms. Pratton responded "No, he could not, Your Honor." T. 102. The ALJ asked whether such an individual "could perform other work existing in the regional or national economy." T. 102. Ms. Pratton responded "Yes, Your Honor." T. 102. After asking the ALJ to clarify that plaintiff's pain "would not interfere with the continuing of the

work task," the VE testified that such an individual could perform the jobs of document preparer, ampoule sealer, and cuff folder, all of which are sedentary.  T. 102.

The ALJ posed a second hypothetical, adding that the "hypothetical individual experiences a moderately severe degree of pain which interferes with concentration, persistence and pace for at least three hours at a time and occurs at least three days a week and does require the hypothetical individual to abandon [his] work or work station for that period of time."  T. 103.  The ALJ asked Ms. Pratton to confirm that such an individual would not be able "to perform any of [plaintiff's] past relevant work."  T. 103.  Ms. Pratton confirmed that such individual could not perform any of plaintiff's past relevant work and also would not be able to perform any other work existing in the regional or national economy because "[t]hat amount of time off task is missing more than a day of work per week in productivity," which would render the individual unable to "maintain competitive employment."  T. 103.

## ANALYSIS

I.    Residual Functional Capacity

Plaintiff first argues the ALJ erred in assigning an RFC he contends is internally inconsistent.  Specifically, Mr. Smith points out that the ALJ found pain

would occasionally interfere with concentration, persistence, and pace, but the interference would not be continuous and would occur, at most, 20 percent of the workday. T. 10. The ALJ also found, as plaintiff states, that he would be able to "maintain concentration, persistence, and pace for two hours at a time with regular breaks" and would not otherwise be required to abandon his work or workstation. T. 10. Mr. Smith argues an RFC comprising both that he could maintain concentration, persistence, and pace for 2 hours at time with regular breaks and, for up to 20 percent of the time, could experience pain that occasionally interfered with concentration, persistence, and pace, is not supported by substantial evidence. According to Mr. Smith, if he could maintain concentration, persistence, and pace for 2 hours with regular breaks, he could not also experience pain that interfered with concentration, persistence, and pace up to 20 percent of the time.

Such is not the case. Indeed, it is entirely plausible that an individual could be distracted by pain up to 20 percent of the work day and still be able to maintain concentration, persistence, and pace for 2 hours at a time with regular breaks. In fact, the undersigned would venture to guess that a fairly significant portion of the working population experiences some pain or other condition that interferes with concentration, persistence, and pace up to 20 percent of the workday but are still able

to perform job duties. Moreover, as the Commissioner points out, regardless of pain, most working individuals require breaks throughout the day – if, for no other reason, because few people can maintain concentration, persistence, and pace without interruption for 8 hours or more at a time. And, here, the ALJ clarified to the VE that the 20 percent of the time Mr. Smith had pain would not interfere with his ability to continue his work as long as he had regular breaks. Plaintiff's argument regarding inconsistencies in the RFC thus is unavailing.

II.   Vocational Expert's Testimony

    A.   Hypothetical Posed to the VE

        1.   Instructions and overhead reaching

Plaintiff next argues the ALJ's decision there were other jobs he could perform is unsupported by substantial evidence in the record because the hypothetical the ALJ posed to the VE "limited plaintiff to one- or two-step instructions and no overhead reaching with the right arm [and] one of the jobs identified by the VE and cited by the ALJ required the ability to deal with several variables, another job required the ability to follow detailed instructions, and all three jobs identified by the VE and cited by the ALJ require frequent reaching which is ruled out by the RFC." Doc. 15, p. 25. Mr. Smith explains the hypothetical was based on an individual who could understand,

remember, and carry out simple one- and two-step instructions and occasionally understand, remember, and carry out detailed or complex instructions and "[o]f the three jobs identified by the VE and cited by the ALJ, only one," cuff folder, "lists a reasoning level of R1 which requires the ability to apply commonsense understanding to carry out simple one- or two-step instructions." Doc. 15, p. 25. "The others," plaintiff says, "require a reasoning level of R2 which requires the ability to apply commonsense understanding to carry out detailed but uninvolved oral instructions and deal with problems involving a few concrete variables in or from standardized situations (ampoule sealer . . . ) or R3 which requires the ability to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations (document preparer . . . )." Doc. 15, p. 25. According to Mr. Smith, "[o]nly jobs requiring a reasoning level of R1 are limited to simple one- or two-step instructions." Doc. 15, pp. 25-26.

Claimant also argues "[a]ll three jobs identified by the VE require frequent reaching . . . , exceeding the ALJ's limitation of never reaching overhead with the right arm." Doc. 15, p. 26. "[B]y citing jobs that exceed the hypothetical question's limitation to simple one- or two-step instructions and the RFC's limitation prohibiting

overhead reaching," plaintiff maintains, "the ALJ issued a decision unsupported by substantial evidence."  D. 15, p. 26.

As set forth above, "[a]t the fifth step of the disability determination process the burden is on the Commissioner to show that, based on the claimant's residual functional capacity, age, education, and work experience, there is other work available in significant numbers in the national economy that the claimant can perform."  *Thomas v. Comm'r of Soc. Sec.*, 497 F. App'x 916, 919 (11th Cir. 2012).  "If the Commissioner shows that such jobs exist, 'the claimant must then prove that he is unable to perform [those] jobs' in order to be considered disabled."  *Id.* (*quoting Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001)).  "The ALJ may use a vocational expert to determine whether there are jobs that the claimant can perform and that are available in significant numbers in the economy."  *Id.*

Here, the ALJ identified at step 5, based largely on the VE's testimony, at least 3 jobs in the national economy plaintiff could perform.  Although plaintiff challenges 2 of those jobs, he acknowledges that 1 of the jobs – cuff folder – is consistent with the hypothetical incorporating his RFC – specifically, the limitations on his ability to follow instructions.  Plaintiff, therefore, has failed to show he cannot perform the job of cuff holder, and he cites no authority for the proposition that the ability to perform

one job is insufficient for finding an individual capable of performing other work in the national economy. *See Brooks v. Barnhart*, 133 F. App'x 669, 670-71 (11th Cir. 2005) ("We have upheld the ALJ's finding that 174 small appliance repairman position[s] in the area in which the claimant resided established the existence of work in significant numbers."); *McPherson v. Comm'r of Soc. Sec.*, No. 2:14cv187-FtM-CM, 2015 WL 4757210, at *6 (M.D. Fla. Aug. 12, 2015) (finding ALJ's error regarding one position harmless when the ALJ found 3 other positions claimant could perform); *Brown v. Astrue*, No. 3:11cv806-J-JRK, 2012 WL 2979046, at *6 (M.D. Fla. July 20, 2012) (finding ALJ's error with regard to one position harmless when ALJ found 2 other positions claimant could perform); *Williams v. Astrue*, No. 208-CV-477-FTM-29SPC, 2009 WL 2045339, at *3 (M.D. Fla. July 8, 2009) ("Since one of the three jobs—information clerk—bears no inconsistency between the Vocational Expert evidence and the DOT, the error was harmless and the ALJ's decision can be upheld if the number of available jobs is sufficient to satisfy the Commissioner's burden at Step 5."). Hence, even if the ALJ erred in finding plaintiff capable of performing the jobs of ampoule sealer and document preparer, which defendant effectively concedes, such error is harmless because the ALJ found plaintiff capable of performing work as a cuff holder, which is consistent with his

RFC.  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding error "harmless because it did not affect the administrative law judge's ultimate determination"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 2012) (same).

With regard to reaching, the ALJ found plaintiff could never reach overhead with his right arm but could frequently reach overhead with his left arm.  Plaintiff has provided no evidence that any of the 3 jobs, including cuff folder, requires the ability to frequently reach overhead with *both* arms.  Plaintiff's argument regarding reaching limitations therefore also is unavailing.

2.    Pushing and pulling limitations

Plaintiff maintains the ALJ erroneously failed to include in the RFC pushing and pulling limitations other than with regard to the operation of hand/arm and foot/leg controls.  The ALJ, however, was not required to include additional pushing and pulling limitations.  Indeed, the ALJ asked the VE to assume an individual who was capable of performing sedentary work as defined in the Commissioner's regulations.  The regulations, at 20 C.F.R. § 416.967(a), provide the sedentary job classification has the same meaning as in the DOT, which limits exertion to "up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . .

to lift, carry, push, or otherwise move objects, including the human body." DOT-IV § 685.687-014, 1991 WL 678284 (cuff folder).[9] In referring to the Commissioner's regulations, both in the hypothetical to the VE and in his decision setting forth plaintiff's RFC, therefore, the ALJ incorporated limitations on plaintiff's ability to push and pull.

B.    Alleged errors and omissions with regard to the VE's testimony

Plaintiff complains the ALJ failed to ask the VE if her testimony conflicted with the DOT in accordance with SSR 00-4p, 65 Fed. Reg. 75,759 (2000), erroneously stated overhead reaching requirements are not directly covered by the DOT, and erroneously stated the VE testified that her testimony was based in part on her education, training, and experience. Plaintiff argues the alleged errors resulted in a decision unsupported by substantial evidence. Plaintiff fails, however, to explain how any of the 3 alleged errors impacted the ALJ's decision. Hence, even if the ALJ erred as plaintiff alleges, plaintiff has failed to demonstrate any harm resulting from such error.[10]

---

[9] The other jobs identified by the VE are not pertinent considering plaintiff could not perform them.

[10] It bears noting that Mr. Smith did not challenge the VE's testimony at the hearing, and he has not identified any conflict between the VE's testimony and the DOT. Moreover, it is clear the VE relied on the DOT because she cited DOT numbers when identifying jobs plaintiff could

Finally, Mr. Smith argues the ALJ's finding there was a significant number of jobs in the national economy plaintiff could perform is not supported by substantial evidence in the record because the ALJ relied on the testimony of the VE, who cited job numbers that appear to be based on the Bureau of Labor Statistics' job numbers for entire Occupational Employment Statistics ("OES") groups that contain more than one DOT title.   In particular, plaintiff faults the ALJ for relying on the VE's testimony there were approximately 427,000 cuff folder jobs in the national economy and 10,300 such jobs in the state of Florida.[11]   According to plaintiff, the U.S. Department of Labor estimates there are approximately 426,670 jobs for the entire OES group 51-9198, which includes the job of cuff folder.  Plaintiff thus argues the VE erroneously used statistics for an entire category of jobs rather than for the specific position of cuff folder.

Pursuant to the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country."  20 C.F.R. § 416.966(a).  Here, the VE identified 3 jobs plaintiff could perform.  Defendant essentially concedes plaintiff

perform.

[11] Again, plaintiff addresses the other 2 positions, but the undersigned need not for the reasons stated above.

would be debarred from 2 of the 3 jobs – document preparer and ampoule sealer – but argues plaintiff's ability to perform the job of cuff folder provides a sufficient basis upon which to affirm the ALJ's decision.

The problem, as plaintiff points out, is the VE failed to identify the number of cuff folder positions available in the national economy.  Instead, she testified to the number of jobs available in the OES category that includes the position of cuff folder. Although there may well be ample cuff holder jobs – and even additional jobs within that OES category – plaintiff can perform, the VE did not testify to that fact.  The ALJ's finding plaintiff could perform other jobs in the national economy based on the VE's testimony regarding the cuff folder position thus is not supported by substantial evidence in the record.[12]   Accordingly, the matter must be remanded for a determination of whether there are other jobs, as opposed to categories of jobs, in the national economy plaintiff can perform.

---

[12]The Commissioner's argument that the VE relied not only on the Bureau of Labor Statistics in estimating job numbers, but "also on her more than 30 years' experience" does not avail.  First, the VE did not say that.  And, one struggles to understand how, regardless of experience, one person could simply  recite the number of particular jobs available in the national economy.  Such falls under the category of data, and not opinion.

CONCLUSION

Because the ALJ relied on the VE's testimony in finding there were other jobs plaintiff could perform, and that testimony was based on a fallacious premise, the case must be remanded for a determination of whether there are other jobs in the national economy claimant can perform. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

ACCORDINGLY**,** it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED and the matter REMANDED for a determination of the Step 5 issue – whether work exists in significant numbers in the national economy that accommodates plaintiff's RFC.

At Pensacola, Florida, this 12th day of April, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being a served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.